

U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2009 JUL -9  PM 4: 12

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANIEL O. CONWILL, IV, | * | |
| | * | CIVIL ACTION NO. |
| **Plaintiff,** | * | |
| | * | **SECTION 09-4365** |
| versus | * | **SECT. 1 MAG 1** |
| | * | |
| GREENBERG TRAURIG, L.L.P., | * | **MAGISTRATE DIVISION** |
| JAY I. GORDON and JOHN B. OHLE, III | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### <u>COMPLAINT FOR DAMAGES</u>

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, DANIEL O.

CONWILL, IV, who respectfully files this Complaint for Damages against Defendants, Greenberg

Traurig, L.L.P., Jay I. Gordon and John B. Ohle, III, upon representing as follows:

### PARTIES

1.     Plaintiff Daniel O. Conwill, IV is a person of the full age of majority, and a resident of the

City of New Orleans, Parish of Orleans, State of Louisiana.

2.     Defendant Greenberg Traurig, L.L.P. ("GT") is a limited liability partnership law firm

organized under the laws of New York with offices in Albany, Amsterdam, Atlanta, Austin, Boston,

Chicago, Delaware, Denver, Fort Lauderdale, Houston, Las Vegas, Los Angeles, Miami, New Jersey,

Fee 350
_ Process EM (3) SMS
X_ Dktd _____
__ CtRmDep_____
__ Doc. No._____

New York, Orange County, Orlando, Palm Beach County North, Palm Beach County South, Philadelphia, Phoenix, Sacramento, Shanghai, Silicon Valley, Tallahassee, Tampa, Tokyo, Tyson's Corner, Washington, D.C., White Plains and Zurich, with "Strategic Alliances" in Berlin, Brussels, London, Milan and Rome.

3.      Defendant Jay I. Gordon is a person of the full age of majority, a resident of the City of New York, County of New York, State of New York and at all material times hereto, was a shareholder in defendant GT.

4.      Upon information and belief, at all material times hereto and beginning at least in December 2002 and continuing through the present, GT and Gordon regularly transacted business in the Parish of Orleans, State of Louisiana, regularly entered into contracts to supply services within the Parish and State, caused tortious injury within the Parish and State by their acts and omissions, regularly solicited business within the Parish and State, and derived substantial revenue from services rendered to citizens of the Parish and State.

5.      Defendant John B. Ohle, III is a person of the full age of majority, a resident of the City of New Orleans, Parish of Orleans, State of Louisiana.

6.      At all material times hereto Ohle regularly transacted business in the Parish of Orleans, State of Louisiana, regularly entered into contracts to supply services within the Parish and State, caused tortious injury within the Parish and State by his acts and omissions, regularly solicited business within the Parish and State, and derived substantial revenue from services rendered to citizens of the Parish and State.

## JURISDICTION AND VENUE

7.      This Honorable Court has jurisdiction over this civil action pursuant to 18 U.S.C. §§1964(a) and 1964(c), and 28 U.S.C. §§1331 and 1337. This is a civil action arising under 18 U.S.C. §§1961-1968, §901(a) of Title IX of the Organized Crime Control Act of 1970, as amended, otherwise known as the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and in particular, under 18 U.S.C. §1964 and other causes of action as set forth hereafter. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue lies in this district pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391. As set forth hereinabove, Defendants at all material times conducted substantial business in this district. The violations occurred in this district. Defendants transact or have transacted their affairs in this district, and their concerted conduct, upon which this action is founded, was directed at and intended to injure Plaintiff in this district.

9.      Defendants, either on their own or through their agents, at the time of the commission of the acts alleged hereunder, were found in and/or transacted business in the State of Louisiana, and the cause of action which is the object of this Complaint arises out of business transactions in the State of Louisiana, including specific acts within this district.

10.      Defendants, either on their own or through their agents, conspired to commit within the State of Louisiana the wrongful acts alleged in this Complaint and/or committed or participated in the commission of those acts within or without the State of Louisiana, purposefully directing their wrongful acts toward the forum of Louisiana, causing in Louisiana, directly or indirectly, the violations of RICO and the other causes of action set forth herein and Plaintiff's resultant injuries.

11.     Plaintiff alleges claims under RICO, as well as under state law for declaratory judgment, legal malpractice, unjust enrichment, breach of fiduciary duty, fraud, negligent representation, breach of contract and civil conspiracy.  Plaintiff seeks disgorgement of the unethical, excessive, and illegal and fraudulent fees and kickbacks paid to the Defendants, jointly and *in solido* with other unnamed co-conspirators, plus compensation for all other damages sustained, including without limitation all fees and costs he has incurred responding to the federal and state tax agencies as a result of the Defendants' actions, and any additional amounts, such as taxes, interest, and penalties, that have been and may be assessed against him by federal and state tax agencies, all of which damages must be trebled under RICO.  Plaintiff also seeks all attorneys' fees and costs incurred in this matter under RICO.

## **FACTUAL BACKGROUND**

12.     The allegations contained in paragraphs 1 through 11 of this Complaint are incorporated herein by reference.

13.     The Defendants, along with certain unnamed co-conspirators (the "Enterprise," sometimes referred to individually as "Members of the Enterprise" or "Members") entered into various arrangements amongst themselves to market and promote certain tax strategies to high net-worth individuals and business entities.

14.     The Enterprise arranged to solicit high net-worth participants, like Plaintiff, who were induced with misrepresentations to engage in this tax strategy and other transactions and pay the Enterprise exorbitant fees for advice that the Defendants and other Members of the Enterprise knew or should have known was improper and illegal.  Defendants and other Members of the Enterprise derived and divided kickbacks from those fees.

15.     Ohle, a licensed attorney, certified public accountant and certified financial planner, approached Plaintiff in 2002, offering financial planning services and consultation for sophisticated tax planning strategies.

16.     Ohle introduced Plaintiff to GT and Jay I. Gordon (hereinafter "Gordon," together with GT collectively referred to as the "GT Defendants"), with whom Plaintiff entered into a representation agreement purportedly to counsel Plaintiff as to the advisability of entering into certain tax strategies - strategies which Ohle, the GT Defendants and other co-conspirators had themselves designed and developed for the illegal purpose of dividing the exorbitant fees amongst the co-conspirators.

17.     At all times relevant to this Complaint, the GT Defendants served as attorneys for Plaintiff and delivered legal services for a fee.

18.     Among other actions performed in furtherance of the conspiracy, the GT Defendants drafted and approved the issuance of "opinion letters" attesting to the lawfulness of tax shelters that Members of the Enterprise, including defendants named herein, had designed and developed.

19.     The GT Defendants wrote such an opinion letter to Plaintiff herein, clearly constituting legal services.

20.     Plaintiff was told by Ohle and the GT Defendants that: (a) these tax strategies were based on "loopholes" in the tax code; (b) attorneys with a blue-chip law firm had independently and objectively reviewed the tax strategies; (c) these attorneys were specialists with excellent and national reputations and experience; (d) these lawyers had concluded that these tax strategies were lawful; (e) these attorneys would provide Plaintiff with an opinion letter attesting to the legitimacy of the tax strategies and confirming that any losses generated by the tax strategies could properly be claimed as tax losses; (f) the GT Defendants' opinion letter, in the event of any IRS or state tax audit,

5

would enable Plaintiff to satisfy federal and state auditors as to the propriety of the tax returns; and (g) the GT opinion letter would serve as a protection against the imposition of tax penalties in the unlikely event the IRS or state tax authorities challenged the tax strategies. These misrepresentations were never corrected.

21.     Based on his reliance on the representations made by the GT Defendants, Plaintiff engaged in the recommended transactions.

22.     It was reasonable for Plaintiff to rely on the legal advice provided by the GT Defendants.

23.     Members of the Enterprise, including Ohle and the GT Defendants, were biased by their own interests, pecuniary motive and gain.  Further, the attorneys employed by the GT Defendants did not comply with applicable ethical rules. Their failure to disclose their conflict of interest, their role in devising the tax strategies at issue, the unreasonableness of their fees, and their fee-splitting agreements were unethical, all which violated the duties they owed Plaintiff.

24.     It is not known how many GT Defendant partners and associates were involved in these efforts, but according to a New York Times article published on November 16, 2006, defendant Gordon himself took over $1.3 million in kickbacks on tax shelters he recommended to his clients.

25.     Upon information and belief, Ohle received a kickback from the fees paid by Plaintiff to the Enterprise for referring Plaintiff to the GT Defendants which was not disclosed to Plaintiff.

26.     Upon information and belief, GT received a kickback from the fees paid by Plaintiff to the Enterprise which was not disclosed to Plaintiff.

27.     Upon information and belief, Gordon received a kickback from the fees paid by Plaintiff to the Enterprise which was not disclosed to Plaintiff.

28.     The GT Defendants did not provide, or even attempt to provide, competent oversight of the attorneys involved in the tax strategy at issue.

29.     A March 5, 2007 article published by an organization called "Citizens for Responsibility and Ethics in Washington" reported that GT has "paid millions - perhaps tens of millions - in fines and settlements to clean up the messes" and that former GT lawyers have said that "rogue lawyers" had been allowed "to join the firm and, until they're caught, thrive."

30.     None of the Defendants informed Plaintiff of the fact of, much less the consequences and implications of, their fee-sharing arrangements.

31.     The fees that were charged to Plaintiff, and the fact that those fees were shared with other entities without the knowledge or approval of the Plaintiff was unethical and violated codes of professional responsibility applicable to lawyers.

32.     Attorneys employed by the GT Defendants had a significant pecuniary interest in inducing Plaintiff to enter into the tax strategies, and to do so, promised, opined and assured that the transactions would enable Plaintiff to lawfully reduce taxes.  These Defendants did not disclose to Plaintiff that their representation of him would be materially limited and impaired by their own interests in the transactions in violation of Rule DR 5-101 of the New York Rules of Professional Conduct and Rule 1.7(a)(2) of the Louisiana Rules of Professional Conduct.

33.     The GT Defendants' undertaking of the representation of Plaintiff violated their duty of care, honesty and loyalty owed by attorneys to their clients and impaired the exercise of their professional judgment in violation of the New York and Louisiana Rules of Professional Conduct.

34.     Plaintiff did not discover or learn until October 2007, and could not reasonably have discovered before then, the breadth of the damages caused by the actions and negligence of Ohle, the GT Defendants and other Members of the Enterprise.

35.     To date, Plaintiff has sustained the following types of damages as a result of the GT Defendants' negligence: (a) fees paid to the GT Defendants; (b) additional taxes assessed by the IRS and state taxing authorities for the tax years that Plaintiff participated in the tax strategies; (c) interest and penalties assessed by the IRS and state taxing authorities; (d) lost opportunity costs; and (e) amounts paid to new tax and legal advisors in order to help extricate Plaintiff from the problems created by Defendants.

### FIRST CAUSE OF ACTION:
### CIVIL VIOLATIONS OF THE RACKETEER
### INFLUENCED AND CORRUPT ORGANIZATIONS ACT

36.     The allegations contained in paragraphs 1 through 35 of this Complaint are incorporated herein by reference.

37.     Plaintiff is a "person" within the meaning of 18 U.S.C. §1964(c).

38.     At all times relevant hereto, Plaintiff and each Member of the Enterprise were "persons" within the meaning of 18 U.S.C. §1961(3).

### The RICO Enterprise

39.     An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associated in fact although not a legal entity."

40.     The enterprise at issue in this case, for purposes of 18 U.S.C. §§1961(3) and 1962(a), 1962(b), 1962(c) and 1962(d), is an association-in-fact of all unnamed co-conspirators and Defendants - "Members of the Enterprise" - collectively referred to herein as "the Enterprise." The

wrongdoers that were part of the association-in-fact Enterprise include Defendants, banking institutions and investment associations, law firms that issued the opinions, accountants that reviewed the strategies and accountants that drafted the Plaintiff's applicable tax returns, as well as those employees and agents of Members of the Enterprise and other non-defendant entities that participated in the unlawful and undisclosed fee sharing. In fact, at times throughout the years that the Enterprise conducted these schemes, the number of Members conspiring and colluding in the Enterprise fluctuated because the Enterprise would newly solicit some additional co-conspirators and discharge others, in order to increase profitability.

41.     While Defendants participated in the Enterprise and were a part of it, Defendants also have an existence separate and distinct from the Enterprise.

42.     Defendants maintained an interest in and control of the Enterprise and also conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

43.     Defendants' control and participation in the Enterprise were necessary for the successful operation of Defendants' scheme.

44.     The Enterprise had an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engaged.

45.     Defendants and all other Members of the Enterprise shared fees, costs, information, resources, and the fruits of its predicate acts. The association-in-fact Enterprise, composed of Defendants and other Members of the Enterprise, was a formal, ongoing relationship which functioned as a continuing unit, pursuing a course of conduct as set forth above (*i.e.,* the pursuit of customer prospects, the promotion and the sale of the series of tax strategies and, importantly, the sharing of fees), with a common or shared purpose (*i.e.,* to convince potential clients that the

9

strategies would decrease or eliminate those clients' tax liabilities when in fact they would not, all the while charging exorbitant fees for the shared benefit of the Members of the Enterprise) and continuity of structure and personnel (including partners, associates and support staff).

46.     Defendants and those employed by and/or associated with the Enterprise, which engaged in interstate commerce, have conducted the affairs of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§1962(a) and (b), and have conspired to violate §1962(c) in violation of §1962(d) by pursuing and soliciting clients, designing, creating, engineering, implementing, marketing, promoting and/or selling and inducing the purchase of transactions which were designed to reduce or eliminate tax liability and which were determined by the IRS to be illegal and/or abusive tax shelters under IRS Notice 2003-81, 2003-51 IRB 1223 and/or other IRS Notices or Announcements, and by collecting exorbitant fees therefor.

47.     Defendants have violated 18 U.S.C. §1962(d), inasmuch as they knowingly, intentionally, and unlawfully, aided and abetted each other and the Enterprise and conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise, through the pattern of racketeering activity described herein.

**The Scheme**

48.     As set forth hereinabove, for a substantial period of time, Members of the Enterprise knowingly, intentionally and directly participated in, or aided and abetted, counseled, commanded, induced, procured or caused and conspired in the pursuit of and solicitation of and eventual inducement of clients for the purpose of obtaining exorbitant fees which were shared amongst the co-conspirator Members of the Enterprise.

49.     The particulars of the scheme as set forth above were achieved by means of false or fraudulent representations or promises and through the use of the mails and/or wires.

## Predicate Acts

50.     With respect to the activities alleged herein, the Enterprise acted at all times with malice toward the Plaintiff, with the intent to engage in the conduct complained of for the monetary benefit of Defendants and other Members of the Enterprise.  Such conduct was done with actionable wantonness and reckless disregard for the rights of Plaintiff.  The predicate acts were acts of deception which furthered the goal of soliciting clients to pay for participation in what the Enterprise knew or should have known was a fraudulent tax shelter transaction which would be deemed abusive by the IRS.

51.     With respect to the activities alleged herein, the Enterprise sought to aid and abet and actually did aid and abet a transaction to violate 18 U.S.C. §§1962(a), (b) and (c).  Each Member of the Enterprise, including Defendants, agreed to interfere with, obstruct, delay or affect interstate commerce by attempting to obtain and actually obtaining fees to which Defendants and other Members of the Enterprise were not entitled.

52.     With respect to the overt acts and activities alleged herein, each Member of the Enterprise conspired with each other co-conspirator entity or to violate 18 U.S.C. §§1962(a), (b) and (c), all in violation of 18 U.S.C. §1962(d).  In violation of §1962(c), each Member of the Enterprise agreed and conspired with each other Member to: a) pursuant to §1962(a), invest fees paid by Plaintiff into pursuing and soliciting other clients, inducing and causing other individuals and business entities to pay for the tax advice at issue; and b) pursuant to §1962(b), acquire or maintain property interests to which the Enterprise was not entitled through racketeering activity which included charging and

sharing exorbitant fees for tax strategies it knew or should have known would be deemed unacceptable by the IRS.

53.     The Enterprise and its individual Members exceeded any legitimate role of diligent tax advisers by designing, creating, engineering, implementing, marketing, promoting and/or selling a series of these tax strategies in an attempt to conspire to obtain money in the form of fees and commissions, knowing that the underlying strategies were likely not defensible to the IRS.

54.     The Enterprise was in the best position to know that these strategies were potentially illegal and/or abusive and yet charged the exorbitant fees anyway.  The Enterprise knew, should have known, and was in the best position to know that these strategies would not withstand the challenge and/or scrutiny of the Internal Revenue Service.

55.     The Enterprise's schemes have resulted in severe financial and business losses to the Plaintiff.  Moreover, as a result of the Enterprise's wire fraud and mail fraud violations, Plaintiff has suffered extensive monetary damages consisting of unexpected tax liability, fees and commissions paid to the Enterprise, as well as interest and penalties demanded by the Internal Revenue Service. Plaintiff has also suffered additional damages, including but not limited to opportunity costs, additional legal, tax advisor and accountant fees and reputation damage.

56.     The Enterprise's documents and communications associated with the schemes at issue contained false and/or misleading representations.

57.     These misrepresentations constitute "false or fraudulent pretenses, representations or promises" within the meaning of the mail fraud (18 U.S.C. §1341) and wire fraud (18 U.S.C. §1343) provisions.

58.     All of the Members of the Enterprise actively participated in this elaborate and abusive scheme to obtain money from Plaintiff, including Defendants herein and others who are not named as defendants to this matter.

59.     The numerous predicate acts of mail and wire fraud described herein are part of separate fraudulent transactions by the Enterprise designed to defraud the Plaintiff of money and property interests under false pretenses.  As the victim of these unlawful patterns of illegal behavior, Plaintiff has continued to suffer losses.

60.     In carrying out the overt acts and fraudulent transactions described herein, the Enterprise engaged in conduct in violation of various state and federal laws and regulations, including but not limited to 18 U.S.C. §§1341, 1343, 1346 and 1961 *et seq.*

61.     18 U.S.C. 1961(1) provides that "racketeering activity means any act indictable under any of the following provisions of Title 18, United States Code: §1341 (relating to mail fraud), §1343 (relating to wire fraud), and §1346 (relating to scheme or artifice to defraud).

### Violations of 18 U.S.C. Sections 1341 and 1343

62.     For the purpose of executing and/or attempting to execute its transaction to defraud and to obtain money by means of false pretenses, representations or promises, the Enterprise, in violation of 18 U.S.C. §1341, placed in post offices and/or in authorized repositories for mail, matter and things to be sent or delivered by the Postal Service and received matter and things therefrom including but not limited to contracts, instructions, correspondence, opinion letters, checks and other items.

63.     For the purpose of executing and/or attempting to execute its transaction to defraud and obtain money by means of false pretenses, representations or promises, the Enterprise, in violation

of 18 U.S.C. §1343, transmitted and received by wire, matter and things therefrom, including but not limited to contracts, instructions, correspondence, opinion letters, funds and other things.

64.    The Enterprise's use of the mails and wires includes private and public components.

65.    The Members of the Enterprise utilized the U.S. Mail and wire to communicate among themselves, as well as with their co-conspirators and clients.  Defendants lived and worked in the States of New York and Louisiana and participated in this scheme from there.  In order to carry out and implement its scheme, the Enterprise necessarily had to communicate using the interstate mails and wires.

66.    In those matters and things sent or delivered by the Postal Service, by wire and through other interstate electronic media, the Enterprise falsely and fraudulently misrepresented and fraudulently suppressed material facts from Plaintiff, in violation of 18 U.S.C. §§1341 and 1343.

67.    The Enterprise intentionally and knowingly made these misrepresentations and intentionally and knowingly suppressed material facts from Plaintiff for the purpose of deceiving him and thereby obtaining financial gain.  The Enterprise either knew, should have known, or recklessly disregarded that the misrepresentations and omissions described herein were material.  Plaintiff justifiably relied on the misrepresentations and omissions in carrying out the transactions, subsequently filing their tax returns, and in paying unnamed co-conspirators and Defendants.

68.    Plaintiff has therefore been injured in its business or property by the Enterprise's overt acts and racketeering activities.

## Pattern of Racketeering Activity

69.    The violations set forth herein constitute "racketeering activities" or "predicate acts" within the meaning of 18 U.S.C. §1961(l).

70.     The Enterprise has engaged in a "pattern of racketeering activity," as defined in §1961 of RICO, by committing and/or conspiring to commit or aiding and abetting a transaction with at least two such acts of racketeering activity, as described specifically herein, within the past ten years.  In fact, upon information and belief, each of the Members of the Enterprise and its co-conspirators have committed at minimum several hundred acts of racketeering activity.  Each act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting similar victims, including Plaintiff herein.

71.     The Enterprise's innumerable racketeering activities or predicate acts are related and also amount to a continuous criminal activity.

72.     These predicate acts are related in the sense that they have the same purpose (to carry out the scheme described herein); result (to obtain money); victims (such as Plaintiff herein and several hundred, if not thousands of, others); method of commission (the scheme described herein); and are otherwise interrelated by distinguishing characteristics and are not isolated events, because they were carried out for the same purpose.

73.     The predicate acts were committed in the same manner, and they constituted the Enterprise's "normal" way of doing business with regard to pursuing and soliciting clients, inducing them to participate, purporting to provide "independent" verification of the tax strategies and then giving tax strategy advice.

74.     The related predicates amount to a continued criminal activity because they extended over a substantial period of time.

75.     The Enterprise's course of action entails a span of years, during which Defendants committed numerous, related predicate acts, as set forth specifically herein, as part of its continuing scheme.

Also, the predicate acts are closely intertwined as far as actors, goals, nature, functioning and structure of the operations described herein in the persecution of Plaintiff and the Enterprise's several hundred, perhaps over a thousand, other victims.

76.     The multiple acts and the continuity and relatedness of racketeering activity committed and/or conspired to or aided and abetted by unnamed co-conspirators and Defendants, as described herein, were related to each other, amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

## SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT AND UNJUST ENRICHMENT

77.     The allegations contained in paragraphs 1 through 76 of this Complaint are incorporated herein by reference.

78.     An actual, justiciable controversy exists between Plaintiff on the one hand and the Defendants and other Members of the Enterprise on the other.

79.     Had the Plaintiff not been pursued, solicited and enticed to enter into the tax strategies designed, created, engineered, implemented, marketed, promoted and/or sold by the Enterprise, he would not have paid fees to Defendants and other Members of the Enterprise.

80.     The payment of fees to Defendants and other unnamed co-conspirators enriched Defendants and other unnamed co-conspirators and was to the detriment of Plaintiff.

81.     Plaintiff seeks a declaration that, due to the foregoing lack of consideration, the Enterprise has been unjustly enriched and all fees paid to the Enterprise, including but not limited to fees paid to Defendants, should be returned to Plaintiff.

82.     Plaintiff also seeks a judgment declaring each defendant liable jointly and *in solido* with all

unnamed co-conspirators for all damages sustained.

83.     Finally, Plaintiff seeks an award of costs and reasonable and necessary attorneys' fees as are

equitable and just.

**THIRD CAUSE OF ACTION:**
**LEGAL MALPRACTICE**

84.     The allegations contained in paragraphs 1 through 83 of this Complaint are incorporated

herein by reference.

85.     In order to recover for legal malpractice under Louisiana law, Plaintiff must prove that "there

was an attorney-client relationship, that the attorney was negligent in his representation of the client

and that this negligence caused plaintiff some loss." *Federal Sav. and Loan Ins. Corp. v. McGinnis,*

*Juban, Bevan*, 808 F. Supp. 1263, 1268 (E.D. La. 1992).

86.     In order to recover for legal malpractice under New York law, Plaintiff must prove that: (1)

the attorney failed to exercise the care, skill, and diligence commonly possessed by a member of the

legal profession, (2) the attorney's conduct was a proximate cause of the loss sustained, (3) the

plaintiff suffered actual damages as a direct result of the attorney's actions or inaction, and (4) but

for the attorney's negligence, the plaintiff would have prevailed in the underlying action." *See e.g.,*

*Lichtenstein v. Barenbaum*, 23 A.D.3d 440, 803 N.Y.S.2d 916 (N.Y.A.D. 2 Dept. 2005).

87.     The GT Defendants acted as Plaintiff's attorneys.  They owed Plaintiff a duty to represent

him with such reasonable skill, care and diligence as members of the legal profession commonly

possess and exercise in similar situations.

88.     Throughout their engagements, in the instant transaction and hundreds of like transactions, the GT Defendants represented that they had a high level of experience in providing tax advice and that they were competent to perform all the necessary services for Plaintiff and others in compliance with the applicable professional standards and the reasonable skill, care and diligence that members of the legal profession commonly possess and exercise in similar situations.

89.     At all times, Plaintiff relied on the GT Defendants to perform all of their material obligations with the requisite skill, expertise and integrity that one would expect from such a prominent law firm.

90.     At all relevant times, the GT Defendants owed a duty to Plaintiff to exercise due care while performing services and functioning as Plaintiff's attorneys.

89.     At all relevant times, the GT Defendants owed a duty to Plaintiff to operate without a conflict between the interests of Plaintiff and the GT Defendants' own pecuniary interests.  At the very least, this conflict should have been disclosed to Plaintiff and was not.

91.     The GT Defendants breached their duties to Plaintiff by the conduct alleged hereinabove.  Said Defendants also failed to register themselves as tax promoters in violation of federal statutes and regulations.

92.     Additionally, the GT Defendants failed to adopt or implement adequate controls to protect their clients from wrongdoing and negligence by GT personnel.

93.     The GT Defendants had a continuing duty to correct their past erroneous tax advice.

94.     The services the GT Defendants provided to Plaintiff were deficient, inadequate and not competent, and were not subject to the appropriate supervisory controls.  These Defendants fell below the standard of care exercised by lawyers engaged to provide legal advice.

95.     Plaintiff fully performed his obligations to the GT Defendants under his agreements with

them.

96.     As a direct and proximate result of the GT Defendants' breach of their duties and

professional negligence, Plaintiff has suffered and will continue to suffer substantial monetary

damages, including but not limited to the payment of fees to the GT Defendants for legal advice; the

loss of legitimate tax savings opportunities and tax deductions; having paid or incurring tax penalties

and interest in an amount of millions of dollars; having to make tax payments of millions of dollars

that he was promised he would not have to make and were advised not to make; and having paid and

continuing to incur millions of dollars in substantial additional costs to hire new tax and legal

advisors to rectify the situation.

**FOURTH CAUSE OF ACTION:**
**BREACH OF CONTRACT, NEGLIGENT REPRESENTATION**
**AND BREACH OF FIDUCIARY DUTY**

97.     The allegations contained in paragraphs 1 through 96 of this Complaint are incorporated

herein by reference.

98.     On September 15, 2003, Plaintiff signed GT's representation agreement, within which GT

promised to "make every effort to satisfy you with prompt, thorough and efficient legal

representation."

99.     Additionally, the Enterprise, including Ohle and the GT Defendants, was Plaintiff's fiduciary,

and, as such, owed Plaintiff the duties of honesty, loyalty, care and compliance.

100.    GT breached its contract with Plaintiff by charging exorbitant fees to Plaintiff and sharing

those fees with others that Plaintiff was not aware of.

19

101.    Defendants negligently represented Plaintiff by allowing Plaintiff to pay exorbitant fees to engage in the tax strategies designed, created, engineered, implemented, marketed, promoted and/or sold by the Enterprise in reliance on its advice, representations, recommendations, instructions, and opinions, which the Enterprise knew or should have known to be improper and illegal.

102.    The Enterprise breached its fiduciary duties to Plaintiff by advising Plaintiff to pay exorbitant fees to engage in the tax strategies designed, created, engineered, implemented, marketed, promoted and/or sold by the Enterprise in reliance on its advice, representations, recommendations, instructions, and opinions, which the Enterprise knew or should have known to be improper and illegal.

103.    The Enterprise breached its fiduciary duties to Plaintiff by committing the acts and/or omissions set forth above.

104.    As a result of the Enterprise's conduct set forth herein, Plaintiff has suffered injury in that he, among other things: a) paid to the Defendants and other Members of the Enterprise exorbitant fees, b) took undue financial risk, c) has incurred tax penalties and interest, d) has incurred opportunity costs; e) has and will continue to incur substantial additional costs in hiring new tax and legal advisors to rectify the situation, f) has incurred reputation damage, and g) has foregone alternative tax opportunities.

105.    As a proximate cause of the foregoing, Plaintiff has been injured in an actual amount to be proven at trial, and should be awarded damages in accordance with the evidence, plus attorneys' fees and costs.

## FIFTH CAUSE OF ACTION:
## FRAUD

106.    The allegations contained in paragraphs 1 through 105 of this Complaint are incorporated

herein by reference.

107.    The Enterprise made false and misleading statements in violation of the laws of the United

States and the State of Louisiana as set forth herein.

108.    The Enterprise made misrepresentations to the Plaintiff herein for the purpose of inducing

Plaintiff to participate in its schemes and to pay the Enterprise enormous sums of money.

109.    In order to induce the Plaintiff to pay it exorbitant fees, the Enterprise made numerous

knowingly false affirmative representations and intentional omissions of material facts to Plaintiff,

including but not limited those acts and/or omissions set forth above.

110.    The above intentional omissions of material fact and/or affirmative representations made by

the Enterprise and its unnamed co-conspirators were false when made and the Enterprise knew or

should have known these representations to be false when made with the intention that Plaintiff rely

on them in deciding whether or not to take the advice of the Enterprise and thereby pay it exorbitant

fees and commissions.  In addition, the above affirmative misrepresentations and/or intentional

omissions of material fact were made knowingly by the Enterprise with the intent to induce Plaintiff

to enter into the abusive tax strategies and pay it exorbitant fees.

111.    In reasonable reliance on the Enterprise's false affirmative representations and intentional

omissions of material facts regarding the transactions at issue, Plaintiff paid to the Enterprise

exorbitant fees to execute the transactions, did not avail himself of alternative tax opportunities, filed

federal and state tax returns that have been deemed to reflect improper deductions for capital and ordinary losses resulting from the transactions, and did not amend his tax returns.

112.    But for the Enterprise's intentional misrepresentations and material omissions described herein, Plaintiff would never have engaged the Enterprise for advice on their tax strategies, engaged in the transactions at issue, claimed the purportedly resulting capital and/or ordinary losses on his income tax returns, filed and signed his tax returns in reliance on the advice of the Enterprise, failed to amend his tax returns, and/or failed to avail himself of other alternative tax opportunities.

113.    After discovering the Enterprise's fraud, Plaintiff incurred and will continue to incur substantial additional costs in hiring new tax and legal advisors to rectify the situation.  As a result of the Enterprise's conduct set forth herein, Plaintiff has suffered injury in that he, among other things: a) paid to the Defendants and other Members of the Enterprise exorbitant fees, b) took undue financial risk, c) has incurred tax penalties and interest, d) has incurred opportunity costs; e) has and will continue to incur substantial additional costs in hiring new tax and legal advisors to rectify the situation, f) has incurred reputation damage, and g) has foregone alternative tax opportunities.

114.    As a proximate cause of the foregoing, Plaintiff has been injured in an actual amount to be proven at trial, and should be awarded damages in accordance with the evidence, plus attorneys' fees and costs.

### SIXTH CAUSE OF ACTION:
### CIVIL CONSPIRACY

115.    The allegations contained in paragraphs 1 through 114 of this Complaint are incorporated herein by reference.

116.    As described more fully herein, the Enterprise and its Members, including Defendants, knowingly acted in concert to obtain exorbitant fees from Plaintiff and others similarly situated.

117.    The Enterprise and its Members, including Defendants acted as described herein according to a predetermined and commonly understood and accepted plan of action, all for the purposes of obtaining exorbitant professional fees from consumers, including Plaintiff.

118.    The acts of the Enterprise were contrary to numerous provisions of law, as stated herein.

119.    There was a meeting of the minds between and among Defendants and other Members of the Enterprise, both known and unknown, to commit the unlawful acts alleged herein. This conspiracy to commit these unlawful, overt acts proximately caused and continues to cause Plaintiff damages as set forth herein.

120.    Gordon, Ohle and other Members of the Enterprise were paid without Plaintiff's knowledge out of the fees that Plaintiff was told to pay to the Enterprise.

121.    As a result of the conduct of Members of the Enterprise including Defendants, Plaintiff suffered injury to his business and property in that he has paid to the Defendants and other Members of the Enterprise exorbitant fees and has incurred actual damages and losses in an amount to be proven at trial; has incurred tax penalties and interest and disallowance of other certain deductions; has incurred and will continue to incur substantial additional fees and costs in hiring new tax and legal advisors to rectify the situation; and has foregone alternative tax and investment opportunities.

122.    As proximate cause of the foregoing, Plaintiff has been injured in an actual amount to be proven at trial and should be awarded damages in accordance with the evidence, plus attorneys' fees and costs.

123.    Plaintiff hereby requests trial by jury on all causes of action alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that, after all due proceedings, the Court enter judgment:

a.  As to the RICO claim, a judgment in favor of Plaintiff and against each Defendant jointly and severally and *in solido* with all unnamed co-conspirators, for actual damages in an amount to be proven at trial, plus treble damages, attorneys' fees, interest and costs;

b.  imposing restitution by the Defendants to Plaintiff of the amount of the fees paid unjustly to Defendants by Plaintiff;

c.  ordering the Defendants to forfeit and disgorge their fees in an amount to be proven at trial;

d.  declaring that Defendants are liable to Plaintiff for such damages that have been incurred as a result of the conspiracy set forth herein;

e.  awarding costs, expenses and reasonable attorneys' fees in favor of Plaintiff and against Defendants to the fullest extent authorized by law; and

f.      granting such other and further relief which the Court deems necessary and proper

at law and in equity.

Dated: July 9, 2009.

Respectfully submitted,

GLADSTONE N. JONES, III (#22221)
LYNN E. SWANSON (#22650)
HARVEY S. BARTLETT (#26795)
JONES, SWANSON, HUDDELL
     & GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Telecopier: (504) 523-2508
**Counsel for Plaintiffs**

25