UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANIEL O. CONWILL, IV** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-4365** |
| **GREENBERG TRAURIG, L.L.P., ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion to dismiss pursuant to 12(b)(2) of the Federal Rules of Civil Procedure,[1] filed by defendant, Jay I. Gordon ("Gordon").[2] Gordon moves the Court to dismiss the plaintiff's second, third, fourth, fifth, and sixth causes of action for lack of personal jurisdiction. Plaintiff, Daniel Conwill ("Conwill"), has filed an opposition.[3] For the following reasons, Gordon's motion is **DENIED.**

### *BACKGROUND*

On July 9, 2009, Conwill filed this lawsuit against Gordon, Greenberg Traurig L.L.P ("Greenberg"), and John B. Ohle ("Ohle") asserting claims under the Racketeer Influenced and

---

[1] R. Doc. No. 14.

[2] In his motion to dismiss, Gordon also adopts in full the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Greenberg Traurig, L.L.P. The Court informed all parties that it will convert the motion to dismiss pursuant to Rule 12(b)(6) into a motion for summary judgment. Therefore, this part of Gordon's motion will be decided at a later date. *See* R. Doc. No. 30.

[3] R. Doc. No. 21.

Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-1968, and under Louisiana state law for declaratory judgment, unjust enrichment, legal malpractice, breach of contract, breach of fiduciary duty, negligent representation, fraud, and civil conspiracy ("non-RICO claims").[4] Conwill alleges that Ohle, a licensed attorney, certified public accountant, and certified financial planner, approached Conwill in 2002, offering financial planning and tax consulting services.[5] Conwill states that Ohle introduced him to Greenberg and Gordon and that Conwill entered into an attorney-client representation agreement with Greenberg and Gordon for the purpose of obtaining legal tax advice.[6] As part of these legal services, Gordon and Greenberg wrote an opinion letter to Conwill, attesting to the lawful nature of certain tax shelters.[7]

> Conwill alleges that the defendants told him that:
>
> (a) [T]hese tax strategies were based on "loopholes" in the tax code; (b) attorneys with a blue-chip law firm had independently and objectively reviewed the tax strategies; (c) these attorneys were specialists with excellent and national reputations and experience; (d) these lawyers had concluded that these tax strategies were lawful; (e) these attorneys would provide Plaintiff with an opinion letter attesting to the legitimacy of the tax strategies and confirming that any losses generated by the tax strategies could properly be claimed as tax losses; (f) [Gordon and Greenberg's] opinion letter, in the event of any IRS or state tax audit, would enable Plaintiff to satisfy federal and state auditors as to the propriety of the tax returns; and (g) [Gordon and Greenberg's] opinion letter would serve as a protection against the imposition of tax penalties in the unlikely event that the IRS or state tax authorities challenged the tax strategies.[8]

---

[4] R. Doc. No. 1.

[5] *Id*. at p. 5.

[6] *Id.*

[7] *Id.*

[8] *Id.* at pp. 5-6.

2

In reliance on the preceding advice, Conwill engaged in the recommended transactions.[9] Conwill attests that the defendants never revealed to him that they had devised the tax strategies at issue[10] and that the defendants knew or should have known that the transaction they advised "was a fraudulent tax shelter transaction which would be deemed abusive by the IRS."[11] Conwill also alleges that the defendants did not tell him that their fees were unreasonable and that their fee-splitting agreements were unethical.[12] Conwill contends that Ohle received payments for referring Conwill to Gordon and Greenberg, that Gordon received payments for recommending that Conwill invest in the tax shelter, and that Greenberg received a payment for Conwill's investment in the tax shelter.[13] Conwill states that the defendants did not inform him of the fee-sharing agreements nor disclose the alleged conflicts of interest.[14]

To date, plaintiff claims he has suffered the following damages as a result of his transactions with the defendants:

> (a) fees paid to [Gordon and Greenberg]; (b) additional taxes assessed by the IRS and state taxing authorities for the tax years that Plaintiff participated in the tax strategies; (c) interest and penalties assessed by the IRS and state taxing authorities; (d) lost opportunity costs; and (e) amounts paid to new tax and legal advisors in order to help extricate Plaintiff from the problems created by Defendants.[15]

---

[9]*Id.* at p. 6.

[10]*Id.*

[11]*Id.* at p. 11.

[12]*Id.* at p. 6.

[13]*Id.*

[14]*Id.*

[15]*Id.* at p. 8.

*LAW AND ANALYSIS*

I. **STANDARD OF LAW**

The plaintiff bears the burden of establishing the Court's jurisdiction over a defendant, by making a prima facie case, if the Court rules without conducting an evidentiary hearing. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)."'[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.'" *Id.* (quoting *D.J. Invs., Inc. v. Metseler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).[16]

---

[16]To help it resolve the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery . . . The court has discretion as to the type and amount of discovery to allow. But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241 (5th Cir. 2008)(internal quotations and citations omitted). In accordance with this district's RICO standing order, R. Doc. No. 4., the plaintiff filed a RICO case statement stating the facts on which he relied to initiate his RICO action. R. Doc. No. 7. The Court notes that when considering a Rule 12(b)(6) motion, courts routinely consider the RICO case statement alongside the complaint. *See, e.g., Tal v. Hogan,* 453 F.3d 1244, 1263 n. 18 (10th Cir. 2006)("When evaluating the sufficiency of pleadings under Rule 12(b)(6) of the Federal Rules of Civil Procedure, we may consider the allegations made in a plaintiff's RICO Case Statement in conjunction with the complaint."); *Int'l Fire and Safety, Inc. v. HC Services, Inc.*, 2006 WL 2483336 at *2(S.D. Miss. Aug. 28, 2006)("In reviewing the RICO Statement in conjunction with the Complaint, the court concludes that the plaintiff has sufficiently pled its claim of fraud and fraudulent misrepresentation with the required particularity to defeat a motion to dismiss."). Therefore, when considering the defendant's motion to dismiss pursuant to Rule 12(b)(6), the Court will consider the allegations in the plaintiff's RICO statement.

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). As "the limits of the Louisiana long-arm statute are coextensive with constitutional due process limits" the Court need only consider the second step of the inquiry. *Walk Haydel*, 517 F.3d at 242-43 (citing *A&L Energy, Inc. v. Pegasus Group,* 791 So.2d 1266, 1270 (La. 2001)).

"The 'minimum contacts' prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

> Where a defendant "has continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80, L.Ed.2d 404 (1984), the court may exercise "general jurisdiction" over any action brought against the defendant. *Id*. at 414, 204 S.Ct. 1868 n. 9. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414, 104 S.Ct. 1868, n. 8.

*Luv N' care, Ltd., v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). In his reply to Gordon's motion to dismiss, Conwill argues only that the Court has specific jurisdiction over Gordon.[17]

The constitutional requirements for specific jurisdiction may be satisfied by a showing that the defendant has "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." *Luv N' care*, 438 F.3d

---

[17]R. Doc. No. 21, p. 13.

at 469 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Specific personal jurisdiction is a claim specific inquiry. "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each of them. . . . the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006).

The Fifth Circuit follows a three-step analysis for specific jurisdiction. First, the Court must determine "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[18] *Nuivo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it "reasonably anticipates being haled into court" in the forum state. *Luv N' care,* 438 F.3d at 470 (quoting *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil*, 481 F.3d at 312 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 105 S.Ct. 2174, 85 L.Ed. 2d 528 (1985)).

Second, the Court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Nuivo Pignone,* 310 F.3d at 378. The proper focus of the personal jurisdiction analysis is on the "relationship among the defendant, the

---

[18]"The 'minimum contacts' requirement can be established through contacts sufficient to assert either specific or general jurisdiction." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841 (5th Cir. 2000).

forum, and the litigation." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

Last, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271(citing *Burger King*, 471 U.S. at 482). In this inquiry the Court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care,* 438 F.3d at 473. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *Johnston*, 523 F.3d at 615 (citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). "The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there." *Id*. (quoting *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999).

**II. PERSONAL JURISDICTION**

In his motion to dismiss pursuant to Rule 12(b)(2), Gordon does not dispute that the Court has jurisdiction over him for purposes of the plaintiff's RICO claim,[19] but urges the Court

---

[19] RICO has its own jurisdictional provisions which provide for nationwide service of process, so long as the Court has personal jurisdiction over at least one defendant. 18 U.S.C. § 1965(a), (b), (c). *See David v. Signal Int'l, L.L.C.*, 588 F. Supp. 2d 718, 723-24 (E.D. La. 2008). Conwill alleges that Ohle has the requisite contacts with the State of Louisiana as he is a resident of New Orleans, Louisiana, and neither Gordon nor Greenberg contest this assertion. R. Doc. No. 21, p. 8. In addition, Greenberg has not challenged the court's jurisdiction over it for purposes of either the plaintiff's RICO or the plaintiff's non-RICO claims. *See* R. Doc. Nos. 12, 25.

to dismiss the plaintiff's non-RICO claims for lack of personal jurisdiction.[20] In an affidavit, Gordon asserts that while he was a shareholder at Greenberg, Ohle contacted him in New York and requested that he provide legal advice to Conwill.[21] Gordon contends that all legal tax advice was prepared for Conwill in New York. Gordon states that he never met with Conwill, nor has he ever traveled to Louisiana for any purpose.[22]

### A. Gordon Has Minimum Contacts with Louisiana

In support of his argument that the Court may exercise specific personal jurisdiction over Gordon, Conwill suggests that Gordon established the requisite minimum contacts because he was part of "the alleged civil conspiracy and RICO Enterprise in concert with Mr. Ohle, a Louisiana resident, which were intended to injure Mr. Conwill, a Louisiana resident."[23] Conwill also argues that Gordon established minimum contacts through his legal representation of Conwill, a Louisiana resident.[24] Conwill also points to a series of written communications that Gordon mailed or faxed to Conwill in Louisiana.[25] In Conwill's RICO case statement,[26] Conwill

---

[20]R. Doc. No. 14, p. 1.

[21]*Id*. at p. 2.

[22]*Id*.

[23]R. Doc. No. 11.

[24]R. Doc. No. 21, pp. 10-11.

[25]*Id. See e.g.* R. Doc. No. 1, p. 5; R. Doc. No. 7, p. 12-13.

[26]In accordance with this district's RICO standing order, R. Doc. No. 4., the plaintiff filed a RICO case statement stating the facts on which he relied to initiate his RICO action. R. Doc. No. 7.

states that these communications included invoices "'for Professional Legal Services'"[27] and "multiple drafts"[28] of an October 10, 2003 opinion letter[29] "which advised the Plaintiff of the propriety of the tax strategies at issue."[30]

First, that Gordon allegedly conspired with Ohle, a Louisiana resident, does not establish the minimum contacts required for personal jurisdiction. "The conspiracy theory of jurisdiction provides that where a court has personal jurisdiction over the co-conspirator of a non-resident defendant due to overt acts committed in the forum in furtherance of the conspiracy, the co-conspirator is deemed the non-resident's 'agent' for purposes of the long-arm statute." *Deitz v. Dietz*, 2008 WL 5351049 at *3 (W.D. La., Sept. 24, 2008). However, the Fifth Circuit has never adopted a "conspiracy theory of jurisdiction." *Hawkins v. Upjohn Co.,* 890 F. Supp. 601 (E.D. Tex. 1994); *Deitz*, 2008 WL 5351049 at *3. As the district court explained in *Hawkins*:

> [T]here is no support in the Fifth Circuit, or any other Circuit for that matter, to support this court exercising personal jurisdiction on [a conspiracy theory of jurisdiction]. In fact, the little case law on this topic is contrary to the plaintiffs' position. In *Bamford v. Hobbs,* 569 F.Supp. 160, 169 (S.D. Tex. 1983), the court stated, "no court has conferred jurisdiction over an alleged conspirator merely because jurisdiction exists as to a fellow alleged conspirator." In the only Fifth Circuit case which even tangentially dealt with the position articulated by the plaintiffs, the court implicitly recognized that personal jurisdiction over one defendant conspirator is not sufficient to grant personal jurisdiction over a non-resident co-conspirator. *See Thomas v. Kadish,* 748 F.2d [276, 282 (5th Cir. 1984) *cert. denied,* 473 U.S. 907, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985)]; *see also Star Technology, Inc. v. Tultex Corp.,* 844 F.Supp. 295, 299 (N.D. Tex.1993) ("Although Plaintiff accuses [the non-resident defendant] of conspiracy, that

---

[27]R. Doc. No. 7, p. 13.

[28]*Id*. at p. 9.

[29]*Id*. at pp. 9-10, 12-13.

[30]*Id*. at pp. 13-14.

9

> allegation alone will not support the Court's exercise of jurisdiction *absent minimum contacts.*")(emphasis added). Therefore, plaintiffs' conclusory allegations that the RICO defendants conspired with defendant Upjohn are insufficient to establish personal jurisdiction over the RICO defendants absent minimum contacts with Texas. *See Thomas,* 748 F.2d at 282.
>
> More importantly, this court should not exercise personal jurisdiction over the RICO defendants pursuant to plaintiffs' conspiracy theory because to do so would allow any defendant, who is allegedly a co-conspirator with a person under the court's personal jurisdiction, to be haled into a forum with which that defendant has no contacts. This result would severely undermine the Supreme Court's rationale that the "Due Process clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182 (*quoting World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567).

890 F.Supp. at 608-609. Similarly, this Court declines to apply a conspiracy theory of personal jurisdiction to the present case.

That the effects of Gordon's alleged actions were felt in Louisiana is also insufficient to confer jurisdiction. "Effects jurisdiction is premised on the idea that an act done outside a state that has consequences or effects within the forum state can suffice as a basis for personal jurisdiction if the effects are seriously harmful or highly likely to follow from the defendant's conduct." *Stroman Realty*, 513 F.3d at 486. The effects of an alleged intentional tort on a resident of the forum state are assessed as part of the Court's analysis of the defendant's relevant contacts with the forum. *Id*. Such jurisdiction is rare and the Fifth Circuit has declined to find jurisdiction where the only basis for jurisdiction is the alleged harm to a resident of the forum state. *Id*. (holding that an Arizona official seeking to regulate real estate activities in Arizona was not expressly aiming her actions at Texas)(internal citations and quotations omitted). Absent

more, that the effects of Gordon's alleged actions were felt in Louisiana is not sufficient to establish minimum contacts.

As for the plaintiff's contention that Gordon's legal representation of Conwill establishes minimum contacts, "merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil*, 481 F.3d at 311. Likewise, the "the bare existence of an attorney-client relationship" is insufficient to establish minimum contacts. *Trinity Indus., Inc. v. Meyers & Assoc.*, 41 F.3d 229, 230 (5th Cir. 1995). The fact that Gordon entered into an agreement to provide Conwill with legal tax advice does not establish that Gordon has minimum contacts with Louisiana.

Communications relating to the performance of a contract are also inadequate, themselves, to establish minimum contacts. *Freudensprun*, 379 F.3d at 344. "[T]his court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Id.* For example, in *Thompson v. Cartlidge*, the Fifth Circuit held that "regular correspondence related to the [clients'] pending lawsuit, including a retainer agreement which they signed in Louisiana" was not sufficient to establish an attorney's minimum contacts with Louisiana. 1998 WL 648514 at *1 (5th Cir. Sept. 3, 1998).

Although precedent is clear that communications directed to a forum alone are insufficient to support a finding of minimum contacts, "[i]n all [those] cases . . . the

communications with the forum did not actually give rise to a cause of action. Instead, the communications merely solicited business from the forum, negotiated a contract, formed an initial attorney-client relationship, or involved services not alleged to form the basis for the complaint." *Wein Air*, 195 F.3d at 123. "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is purposefully availing himself of causing a consequence in [the forum state]." *Id*. The fact that Gordon has never visited Louisiana is not determinative. In fact, "'the precise number of physical visits [to the forum state] may be irrelevant' because 'it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted.'" *Wein Air*, 195 F.3d at 213 (quoting *Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233 (7th Cir. 1990) (quoting *Burger King*, 471 U.S. at 476)).

In *Lewis v. Fresne*, the Fifth Circuit found that alleged false statements made during a single phone call and the mailing of materials alleged to be fradulent were enough to establish specific personal jurisdiction over an out-of-state defendant. 252 F. 3d 352, 358-59 (5th Cir. 2001). "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Id*. at 358 (citing *Brown v. Flowers Indus.*, 688 F.2d 328, 332-33 (5th Cir. 1986)(holding that one long distance telephone call alleged to constitute defamation was enough to establish minimum contacts)). As the *Lewis* court stated:

> There have been other cases where mere communications or negotiations with a resident of the forum state were not enough to subject non-resident defendants to the forum state's jurisdiction. *See e.g. Aviles v. Kunkle*, 978 F.2d 201, 205 (5th

12

> Cir. 1992)(one telephone call and one letter not enough to confer personal
> jurisdiction). These cases did not, however, involve an intentional tort. Lewis
> contends that all of the defendants intentionally defrauded him by lying about the
> ownership of the Nantucket Mad Martha's store. Recently this Court explained
> that "[w]hen the actual content of the communications with a forum gives rise to
> intentional tort causes of action, this alone constitutes purposeful availment."
> *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). The "actual
> content" of [the defendants'] communications to Lewis shows purposeful
> availment of the benefits and protections of Texas law.

*Lewis*, 252 F.3d at 359. *See also Ross v. Wohl*, 246 Fed. Appx. 856, 859-60 (5th Cir. 2007)(allegations that counsel communicated false information to client in Texas were sufficient to make prima facie case of specific personal jurisdiction).

In this case, the actual content of Gordon's communications with Conwill, namely the multiple drafts of the October 10, 2003 opinion letter, give rise to the tortious conduct at issue. Conwill alleges that the October 10, 2003 opinion letter and earlier drafts of the letter contained false statements and misrepresentations and failed to disclose material facts.[31] He contends that the letter attested to the lawful nature of certain tax shelters which the defendants knew or should have known were illegal and that the letter did not disclose that the defendants had designed and developed the tax shelters and stood to benefit financially if the plaintiff invested in the tax shelters.[32] The alleged content of Gordon's communications with Conwill constitutes purposeful availment of the benefits and protections of Louisiana. law. Accordingly, Gordon has the requisite minimum contacts with Louisiana.

---

[31]*See, e.g.* R. Doc. No. 7, pp. 5, 9-10, 12-14.

[32]R. Doc. No. 1, pp. 1, 5-6, 11.

### B. Conwill's Claims Arise Out of Gordon's Minimum Contacts

Having determined that Gordon purposefully directed his activities at Louisiana, the Court turns to the second prong of the analysis to consider whether Conwill's claims arise out of or relate to the activities Gordon directed at the forum. *See Nuivo Pignone*, 310 F.3d at 378. Conwill's claims for declaratory judgment, unjust enrichment, legal malpractice, breach of contract, breach of fiduciary duty, negligent representation, fraud, and civil conspiracy arise directly out of Gordon's opinion letter advising Conwill to invest in the tax shelter at issue. Accordingly, Conwill's cause of action arises out of or relates from the defendant's forum contacts.

### C. Specific Personal Jurisdiction Would Not Be Unfair Or Unreasonable

Once the plaintiff has established minimum contacts with the forum state, the burden shifts to the defendant to show that the assertion of personal jurisdiction over him would be unfair. *Seiferth*, 472 F.3d at 271. The defendant has not made such an argument. It is rare that a defendant can make such a compelling case once minimum contacts have been shown. *Wein* Air, 195 F.3d at 215. Moreover, "[i]f a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state." *Id*.

Louisiana has a significant interest in providing a forum for this action because the injured party, Conwill, is a Louisiana resident. *See Id.*; *Lewis*, 252 F.3d at 359. Moreover,

Gordon does not dispute that the Court has personal jurisdiction over him as to the RICO claim[33] and, therefore, the burden to having to defend the additional state law claims in Louisiana is slight. The Court finds that the exercise of specific personal jurisdiction over Gordon as to the non-RICO claims would not be unfair or unreasonable.

### III. PENDENT PERSONAL JURISDICTION

Alternatively, Conwill argues that the Court should exercise pendent personal jurisdiction over Gordon with respect to Conwill's non-RICO claims. As noted earlier, "RICO has its own venue and jurisdiction provisions which provide for nationwide service of process so long as one of the defendants is properly before the court." *David v. Signal Int'l*, 588 F. Supp. 2d 718, 723 (E.D. La. 2008). Conwill urges that "once personal jurisdiction is established over Mr. Gordon for the purposes of the RICO claim, then this Court has personal jurisdiction over him for the purposes of the other claims in the Complaint that arise out of the same actionable conduct."[34] Gordon does not dispute this Court's jurisdiction over him as to the RICO claim.[35]

The Northern District of Texas explained the doctrine of pendent personal jurisdiction in *Rolls-Royce Corp. v. Heroes, Inc.*:

> Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal

---

[33]*See* R. Doc. No. 14.

[34]R. Doc. No. 21, p. 9.

[35]*See* R. Doc. No. 14.

15

> jurisdiction over the first claim, asserts personal jurisdiction over the second claim.

576 F. Supp. 2d 765, 783 (N.D. Tex. 2008)(citing *United States v. Botefur*, 309 F.3d 1263, 1272-73 (10th Cir. 2002)); *see also* 4A Wright & Miller § 106.7(explaining pendent personal jurisdiction: "a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks jurisdiction over only when that claim arises out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction power of the court"). "'In essence, once a district court has personal jurisdiction over a defendant for one claim, it may piggyback onto that claim other claims which arise from the same facts as the claim over which it has proper personal jurisdiction.'" *Rolls Royce*, 576 F. Supp. 2d at 783 (quoting *Botefur,* 309 F.3d at 1272)(internal quotations omitted).

Although the Fifth Circuit has not yet addressed the issue of pendent personal jurisdiction, most federal courts that have addressed it have upheld the doctrine of pendent personal jurisdiction. *See* 4A Wright & Miller § 106.7. As the *Rolls Royce* court explained:

> Although the Fifth Circuit has not yet addressed this doctrine of federal common law, the Tenth Circuit has noted that every circuit court to decide the issue has approved pendent personal jurisdiction. *Botefuhr,* 309 F.3d at 1273; *see Robinson Eng'g Co., Ltd. Pension Plan & Trust v. George,* 223 F.3d 445, 449-50 (7th Cir. 2000) (applying pendent personal jurisdiction over federal claim after acquiring personal jurisdiction on related federal claim); *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1362 (Fed. Cir.2001) (authorizing pendent personal jurisdiction over declaratory judgment action when personal jurisdiction was based on federal statute); *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 628 (4th Cir. 1997) (holding that district court had authority to exercise pendent personal jurisdiction over state-law claims because it had personal jurisdiction over defendant on factually related federal claims); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056-57 (2d Cir. 1993) (holding that district court had personal

> jurisdiction over defendants as to related state-law claims on basis of pendent personal jurisdiction, because personal jurisdiction was proper over same defendants under federal statute authorizing nationwide service of process); *Oetiker v. Jurid Werke, G.m.b.H.,* 556 F.2d 1, 4 (D.C. Cir. 1977) (approving of pendent personal jurisdiction); *Robinson v. Penn Cent. Co.,* 484 F.2d 553, 555-56 (3d Cir. 1973) (affirming district court's exercise of pendent personal jurisdiction over state-law claims that were factually related to Securities Act claim through which defendants were served with process under statute's nationwide service of process provision). Since the Tenth Circuit's decision in *Botefuhr,* the Ninth Circuit has joined the other seven circuit courts in authorizing district courts to exercise pendent personal jurisdiction. *See* [*Action Embroidery Corp. v. Atl. Embroidery, Inc.,* 368 F.3d 1174, 1181 (9th Cir. 2004)].

576 F. Supp.2d at 783-84.[36] Several district courts within the Fifth Circuit have exercised discretionary pendent jurisdiction over non-RICO claims where the district court found it had jurisdiction over the RICO claim and the non-RICO claims arose from the same nucleus of operative facts. *See Rolls-Royce*, 576 F. Supp.2d at 784; *Oblio Telecom, Inc. v. Patel*, 2008 WL 4936488 at *5 (N.D. Tex., Nov 18, 2008)(holding that where the state law claims arose from the same nucleus of operative fact as the RICO claims, the court could exercise pendent personal jurisdiction over the state law claims); *David*, F. Supp.2d at 724 ("The Court in its discretion also will exercise pendent personal jurisdiction over the Global Defendants with respect to the non-RICO claims.").

---

[36]The majority of these decisions upheld pendent personal jurisdiction over state claims where a statute providing for nationwide service of process grants the court jurisdiction over the federal claims. As the Second Circuit held, "by giving jurisdiction over an 'action to enforce a federal right, Congress granted the district courts power also to consider state law claims provided they had a nucleus of pertinent facts in common with a substantial federal claim." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993)(quoting *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 719 (2d Cir. 1980). The Federal Circuit has exercised pendent personal jurisdiction over a declatory judgment action when personal jurisdiction was found as to a factually related federal claim. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362 (Fed. Cir. 2001).

Gordon urges the Court not to exercise pendent personal jurisdiction over the non-RICO claims because "[p]ublic policy mandates rejection of any theory that the inclusion of a RICO claim automatically confers personal jurisdiction over all non-RICO claims as well."[37] However, the exercise of pendent personal jurisdiction is discretionary, not automatic. *See Rolls-Royce*, 576 F. Supp.2d at 784 ("[I]f plaintiff's remaining claims arise out of the same nucleus of operative fact as its RICO claims it is *within the court's discretion* to exercise pendent personal jurisdiction over them.")(emphasis added). Conwill's non-RICO claims arise from the same nucleus of operative fact as his RICO claims: all claims derive from the defendants' alleged scheme to induce investments in illegal tax shelters from which the defendants allegedly profited. As Wright & Miller explains:

> [A] defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim. Notions of fairness to the defendant simply are not offended in this circumstance.

§ 106.7. Gordon would not be severely inconvenienced by litigating the non-RICO claims at the same time as the RICO claims. Therefore, this Court, in its discretion, will exercise pendent personal jurisdiction over Gordon with respect to the non-RICO claims.

The defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is **DENIED.**

---

[37]R. Doc. No. 26, p. 8 n.3.

New Orleans, Louisiana, December 21, 2009.

                                      **LANCE M. AFRICK**
                           **UNITED STATES DISTRICT JUDGE**