# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANIEL CONWILL, IV** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-4365** |
| **GREENBERG TRAURIG, L.L.P., JAY I. GORDON AND JOHN B. OHLE, III** | **SECTION I** |

## ORDER AND REASONS

Defendants, Greenberg Traurig, L.L.P. ("Greenberg") and Jay Gordon ("Gordon"), ("defendants")[1] have filed motions for summary judgment in the above-captioned case.[2] The plaintiff has filed an opposition. For the following reasons, the motions[3] for summary judgment are **GRANTED IN PART** and **DENIED IN PART.**

### *BACKGROUND*

On July 9, 2009, Conwill filed this lawsuit against Gordon, Greenberg Traurig L.L.P. ("Greenberg"), and John B. Ohle, III ("Ohle") asserting claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-1968, and under Louisiana law for declaratory judgment, unjust enrichment, legal malpractice, breach of contract, breach of fiduciary duty, fraud, and civil conspiracy to commit fraud ("non-RICO claims").[4] Conwill

---

[1] For purposes of this order and reasons, "defendants" refers to Greenberg and Gordon only and not to John B. Ohle, III.

[2] R. Doc. Nos. 33, 35. Gordon's motion for summary judgment adopted in full the arguments set forth in Greenberg's motion for summary judgment. R. Doc. No. 35-1, p. 1.

[3] R. Doc. Nos, 33, 35.

[4] R. Doc. No. 1. Plaintiff's claims for declaratory judgment and unjust enrichment were dismissed on July 15, 2010.

alleges that Ohle, a licensed attorney, certified public accountant, and certified financial planner, approached Conwill in 2002, offering financial planning and tax consulting services.[5] Conwill states that Ohle introduced him to Gordon and Greenberg and that in September, 2003, Conwill entered into an attorney-client representation agreement with Gordon and Greenberg for the purpose of obtaining legal tax advice.[6] As part of these legal services, Gordon and Greenberg wrote an October, 2003 opinion letter to Conwill, attesting to the lawful nature of certain tax shelters.[7] Conwill states that the writing of such opinion letter "clearly constitut[ed] legal services."[8]

Conwill alleges in his complaint that the defendants told him that:

(a) [T]hese tax strategies were based on "loopholes" in the tax code; (b) attorneys with a blue-chip law firm had independently and objectively reviewed the tax strategies; (c) these attorneys were specialists with excellent and national reputations and experience; (d) these lawyers had concluded that these tax strategies were lawful; (e) these attorneys would provide Plaintiff with an opinion letter attesting to the legitimacy of the tax strategies and confirming that any losses generated by the tax strategies could properly be claimed as tax losses; (f) [Gordon and Greenberg's] opinion letter, in the event of any IRS or state tax audit, would enable Plaintiff to satisfy federal and state auditors as to the propriety of the tax returns; and (g) [Gordon and Greenberg's] opinion letter would serve as a protection against the imposition of tax penalties in the unlikely event that the IRS or state tax authorities challenged the tax strategies.[9]

In reliance on the preceding advice, Conwill participated in the recommended

---

[5]*Id*. at p. 5.

[6]*Id.*; *Id.* at 19.

[7]*Id.* at p. 5.

[8]*Id*.

[9]*Id.* at pp. 5-6.

2

transactions.[10] Conwill attests that the defendants never revealed to him that they had devised the tax strategies at issue[11] and that the defendants knew or should have known that the transaction they advised "was a fraudulent tax shelter transaction which would be deemed abusive by the IRS."[12] Conwill also alleges that the defendants did not tell him that their fees were unreasonable and that their fee-splitting agreements were unethical.[13] Conwill contends that Ohle received payments for referring Conwill to Gordon and Greenberg, that Gordon received payments for recommending that Conwill invest in the tax shelter, and that Greenberg received a payment for Conwill's investment in the tax shelter.[14] Conwill states that the defendants did not inform him of the fee-sharing agreements nor did they disclose the alleged conflicts of interest.[15]

To date, plaintiff claims he has suffered the following damages as a result of his transactions with the defendants:

> (a) fees paid to [Gordon and Greenberg]; (b) additional taxes assessed by the IRS and state taxing authorities for the tax years that Plaintiff participated in the tax strategies; (c) interest and penalties assessed by the IRS and state taxing authorities; (d) lost opportunity costs; and (e) amounts paid to new tax and legal advisors in order to help extricate Plaintiff from the problems created by Defendants.[16]

Defendants' motion for summary judgment asserts that all of plaintiff's claims are time

---

[10]*Id.* at p. 6.

[11]*Id.*

[12]*Id.* at p. 11.

[13]*Id.* at p. 6.

[14]*Id.*

[15]*Id.*

[16]*Id.* at p. 8.

3

barred.

*LAW AND ANALYSIS*

*A. Summary Judgment*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. *Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## B. RICO Statute of Limitations

Civil RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 552, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). To determine when a RICO claim accrues, the Fifth Circuit applies the "injury discovery" rule, whereby the limitations period runs from the date on which "the plaintiff discovers, or should have discovered, the injury." *Love v. Nat'l Med. Enter.*, 230 F.3d 765, 773 (5th Cir. 2000). Plaintiff's discovery of the injury, not plaintiff's discovery of the other elements of a RICO claim, is the event that "starts the clock." *Rotella*, 528 U.S. at 555.

Plaintiffs are "not permitted a leisurely discovery of the full details of the alleged scheme. A plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation and is charged with the knowledge of all facts such an investigation would have disclosed." *Snelling v. Jensen*, 841 F.2d 600, 607 (5th Cir. 1988) (discussing inquiry notice in the context of federal securities claims) (internal citations and quotations omitted). "Investors are not free to ignore 'storm warnings' which would alert a reasonable investor to the possibility of fraudulent statements or omissions." *Id.* In *Cetel v. Kirwan Fin. Grp., Inc.*, the U.S. Court of Appeals for the Third Circuit explained "storm warnings" as follows:

5

> Storm warnings have not been exhaustively catalogued, but they are essentially any information or accumulation of data "that would alert a reasonable person to the probability that misleading statements or significant omissions had been made." [*Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001).] This is an objective inquiry and hinges not on a plaintiff's actual awareness of suspicious circumstances or even on the ability of a plaintiff to understand their import. Instead, "[i]t is enough that a reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning." *Id*. This charge saddles the investor with responsibilities like reading prospectuses, reports, and other information related to the investments, *Mathews*, 260 F.3d at 252, and, additionally, assumes knowledge of "publicly available news articles and analyst's reports." [*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006)] (quoting *Lui v. Credit Suisse First Boston Corp.* (*In re Initial Public Offering Sec. Litig.*), 341 F.Supp.2d 328, 345 (S.D.N.Y. 2004)).

460 F.3d 494, 507 (3d Cir. 2006).[17] A defendant asserting the affirmative defense of the expiration of a limitations period bears the burden of proof. *Frame v. City of Arlington*, 575 F.3d 432, 441 (5th Cir. 2009) (citing Fed. R. Civ. P. 8).[18]

Defendants assert that an April 7, 2004 letter signed by Gordon and a December 8, 2004 letter signed by a representative of Greenberg put Conwill on inquiry notice of his injury.[19] The April 7, 2004 letter stated that "the IRS issued Notice 2003-81 last December" which "specified

---

[17]The Third Circuit further explains in *Cetel* that once the defendant has met its burden of showing "storm warnings," the burden then shifts "to plaintiffs to show that, heeding the storm warnings, they exercised reasonable diligence but were unable to find and avoid the storm." 460 F.3d at 507. (internal citations omitted).

[18]Federal courts recognize the equitable doctrine of fraudulent concealment, which may toll the statute of limitations. *Astoria Entertainment, Inc. v. Edwards*, 159 F. Supp. 2d 303, 316 (E.D. La. 2001). A plaintiff "'may invoke the fraudulent concealment doctrine only by proving two elements: first, that the defendants concealed the conduct complained of, and second, that the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim.'" *Id.* (quoting *State of Texas v. Allan Construction Company, Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988).
  Although plaintiff has not specifically invoked the doctrine of fraudulent concealment, plaintiff states in his opposition that "Mr. Conwill's allegations [in his complaint] include that the defendant's actions included concealing their wrongful conduct." R. Doc. No. 42, p. 12. Because the Court finds that plaintiff's RICO claims are not prescribed, the Court does not address whether the doctrine of fraudulent concealment applies in this case.

[19]R. Doc. No. 33-1, p. 3.

a transaction similar to [the transactions in which Conwill invested] as a 'listed transaction' for purposes of the tax shelter regulations. Any transaction that is the same as or substantially similar to a 'listed transaction' is subject to disclosure. . . ."[20] The letter suggested that Conwilll "discuss these disclosure requirements with your return preparer."[21] The letter further explained:

> When the IRS specifies a transaction as a 'listed transaction'. . . [it] does not directly address the merits of such transaction from a tax standpoint. That said, it is generally assumed that the IRS will challenge the tax consequences of every 'listed transaction' at some point in the future. *The outcome of such challenge is impossible to predict at this time*.[22]

The letter also informed Conwill that he had "the option to file a qualified amended return . . . that [would reverse] the tax consequences of the transaction."[23]

The December 8, 2004 letter sent to Conwill informed him that Greenberg had provided a list of reportable transactions to the IRS and that the list included Conwill's transactions.[24] The letter further stated that the IRS had requested additional information concerning Conwill's transaction and it requested Conwill's permission to disclose the requested information.[25]

The Court finds that defendants have not met their burden of showing that, having received such letters, plaintiff "knew or should have known" about his injuries. Defendants have not demonstrated that the letter would "alert a reasonable investor to the possibility of fraudulent statements or omissions" by defendants. *See Snelling*, 841 F.2d at 607; *see also Cetel*, 460 F.3d

---

[20]*Id.*

[21]*Id.*

[22]*Id.* (emphasis added).

[23]R. Doc. No. 33-2, p. 3.

[24]R. Doc. No. 83-1, p. 4.

[25]*Id.*

7

at 507. The letters neither retracted nor directly contradicted any previous statements by defendants and they did not inform plaintiff that he would likely suffer adverse tax consequences. Nor is the fact that plaintiff retained counsel to represent him with respect to federal tax matters determinative.

### C. Peremption Pursuant to Louisiana Revised Statute 9:5605

Gordon and Greenberg assert that plaintiff's claims against them have been extinguished by a Louisiana peremptive statute that places an absolute time limit on bringing malpractice-related claims in this state. *See* La. Rev. Stat. 9:5605.[26] [27] Louisiana Revised Statute 9:5605

---

[26] Neither party disputes that Louisiana law governs the applicable prescriptive/peremption periods in this case.

[27] Louisiana Revised Statute 9:5605 states, in pertinent part:

*Actions for legal malpractice*

A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.

D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in

8

states that an "action for damages . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services" is subject to a peremption period of one year from the date of the "alleged act, omission, or neglect" or one year from the date on which such "alleged act, omission, or neglect is discovered or should have been discovered." La. Rev. Stat. 9:5605(A). Moreover, legal malpractice actions are also subject to a peremption period of three years from the date of the alleged act, omission, or neglect. *Id.* As the court explained in *Evans v. Bank of Switzerland*:

> Unlike prescription, which "merely prevents the enforcement of a right," peremption "destroys the right itself." La. Civ. Code art. 3458, comment (b). Peremption differs from prescription also in that it is not subject to interruption or suspension. La. Civ. Code art. 3461. To avoid peremption under section 9:5605, a claim must be brought "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered." La. Rev. Stat. § 9:5605(A). Moreover, "even as to actions filed within [this] one year" period, "in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect." *Id.*

2002 WL 31682787 at *6 (E.D. La. 2002).

Plaintiff entered into an attorney-client relationship with defendants for the purpose of obtaining legal tax advice in 2003.[28] Plaintiff states that an October, 2003 opinion letter by defendants attesting to the lawful nature of certain tax shelters "clearly constitut[ed] legal advice."[29] Plaintiff concedes in an affidavit that he discovered "the full breadth of the wrongful conduct by the defendants . . . and my resulting injuries" in October, 2007.[30] Plaintiff did not file

---

Civil Code Article 1953.

[28] R. Doc. No. 1, p. 5.

[29] *Id.*

[30] R. Doc. No. 42-1, p. 4.

the above captioned lawsuit until July, 2009. Accordingly, although plaintiff asserts that Louisiana Revised Statute 9:5605 does not apply because (1) the statute does not apply to out-of-state attorneys and (2) the statute is limited to traditional legal malpractice claims, plaintiff's claims against defendants may be perempted if Louisiana Revised Statute 9:5605 applies.[31]

*Application of Louisiana Revised Statute 9:5605 to Out-of-State Attorneys*

Louisiana Revised Statute 9:5605 applies to actions for damages "against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law." La. Rev. Stat. 9:5605(A). Plaintiff argues that such statute does not apply to out-of-state attorneys. Defendants urge the Court to adopt the 2002 holding of the district court in *Evans* that Louisiana Revised Statute 9:5605 applies to out-of-state attorneys and law firms "whose activities are 'authorized' - that is, permitted, allowed, and not prohibited - under Louisiana law." 2002 WL 31682787 at *8.

In 2006, the U.S. Court of Appeals for the Fifth Circuit in *Henry v. Duane Morris, LLP*, 210 F. App'x 356, 2006 WL 3677088 (5th Cir. Dec. 12, 2006) considered the applicability of such statute to a law firm not licensed to practice in Louisiana. In that case, the Fifth Circuit stated that as the Louisiana Supreme Court had not decided this issue and "[b]ecause there is no guidance on the applicability of § 9:5605 to the facts at issue here, we decline to determine how

---

[31]In a supplemental response to the motion for summary judgment, plaintiff argues that he actually learned of defendants' legal malpractice in the fall of 2008. *See* R. Doc. No. 155, pp. 13-15. Plaintiff has not presented any admissible evidence in support of such argument. Moreover, such argument directly contradicts plaintiff's sworn affidavit that he learn[ed] of the *full breadth of the wrongful conduct* by the defendants . . . [and] my *resulting injuries*" in October, 2007. R. Doc. No. 42-1, p. 4. (emphasis added).

10

the Louisiana Supreme Court would rule on this issue. . . . Instead we apply the more general, one-year prescriptive period in La. Civ. Code Ann. Art 3492 [to the legal malpractice claim], which applies if a more specific peremptory period does not apply." *Id.* at 359. Concurring in *Brown v. Slenker*, U.S. Fifth Circuit Court of Appeals Judge Thomas Reavley stated that "[t]he one year prescription period of LSA-R.S. 9:5605 only applies to claims against attorneys licensed to practice in Louisiana." 220 F.3d 411, 427 (5th Cir. 2000). This Court will follow the Fifth Circuit's approach in *Henry* and it declines to apply Louisiana Revised Statute 9:5605 to plaintiff's claims.

*Prescription Pursuant to La. Civ. Code Ann. art 3492*

Pursuant to *Henry*, this Court applies the one-year prescriptive period in Louisiana Civil Code Article 3492 to plaintiff's legal malpractice claim. Plaintiff's fraud claim is also subject to the one-year prescriptive period in Louisiana Civil Code Article 3492. *Winn Fuel Service, Inc. v. Booth*, 34 So.2d 515, 519 (La. App. 2 Cir. 2010).

Plaintiff states in an affidavit that he 'learn[ed] of the full breadth of the wrongful conduct by the defendants . . . [and] my resulting injuries" in October, 2007. [32] Therefore, his legal malpractice claim and fraud claims accrued more than one year before he filed his lawsuit in July, 2009. Accordingly, plaintiff's legal malpractice claim and plaintiff's fraud claim are prescribed pursuant to Louisiana Civil Code Article 3492.

*Plaintiff's Conspiracy Claim*

Because plaintiff's fraud claim is prescribed, his claim for civil conspiracy to commit

---

[32]R. Doc. No. 42-1, p. 4. Plaintiff does not allege that the doctrine of *contra non valentem* is applicable to the one-year prescriptive period. Pursuant to the doctrine of *contra non valentem*, if a plaintiff can show that he was unaware of his cause of action until a year before the date he filed the malpractice suit, he could escape the application of the prescriptive period in Louisiana Civil Code article 3492. *See Henry*, 210 F. App'x. at 356.

fraud must also be dismissed. Louisiana does not recognize an independent tort of civil conspiracy. *Butz v. Lynch*, 710 So.2d 1171, 1174 (La. App. 1 Cir. 1998); *Rhyce v. Martin*, 173 F. Supp. 2d 521, 535 (E.D. La. 2001). "The actionable element under article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury." *Rhyce*, 173 F. Supp. at 535. Because plaintiff's claim for fraud is prescribed, plaintiff may not recover for a conspiracy to commit fraud.[33]

### *Plaintiff's RICO Claim*

To the extent that defendants' motions for summary judgment assert that plaintiff's RICO claim is barred by a Louisiana state law statute of limitations period, the motions are denied. The U.S. Supreme Court has held that, pursuant to federal law, a four-year statute of limitations period applies to civil RICO claims. *Rotella*, 528 U.S. at 552 (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987)). Greenberg makes no effort to distinguish such precedent and admits that no Louisiana court has held that Louisiana Revised Statute 9:5605 applies to RICO claims.[34]

### *Plaintiff's Claims for Breach of Contract*

Under Louisiana law, "[t]he correct prescriptive period to be applied in any action depends on the nature of the action; it is the duty breached that should determine whether an action is in tort or contract." *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 886 (5th Cir. 2002). Pursuant to Louisiana Civil Code article 3499, a ten-year prescriptive period

---

[33] The Court observes that plaintiff's complaint failed to identify the underlying intentional tort that was the basis for the alleged conspiracy. *See* R. Doc. No. 1, pp. 22-23. Plaintiff's counsel stated at a July 15, 2010 telephone status conference that plaintiff was alleging a conspiracy to commit *fraud*. R. Doc. No. 143.

[34] R. Doc. No. 33-1, p. 10.

applies to breach of contract claims. *Id.*; *First Louisiana Bank v. Morris & Dickson Co., LLC*, 6 So. 3d 1047, 1051 (La. App. 2 Cir. 2009). As stated, a one-year prescriptive period applies to delictual actions. La. Civ. Code. art. 3492.

The distinction between contractual and delictual damages is that contractual damages "flow from an obligation contractually assumed by the obligor," while delictual damages "flow from a violation of general duty owed by all persons." *Terrebonne Parish*, 310 F.3d at 886-87. Accordingly, in order to maintain a claim for breach of contract, the claimant must allege that the defendant breached a particular contractual provision or duty. *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009). Even if the parties are bound by a contract, "unless a specific contract provision is breached, Louisiana treats the action as tort." *Id.* (citations omitted).

Prior to the enactment of Louisiana Revised Statute 9:5605 in 1990, Louisiana courts held that, although actions for legal malpractice against an attorney are generally subject to the one-year prescriptive period, there are two exceptions:

> (1) when the attorney expressly warrants a specific result and fails to obtain that result, and (2) when the attorney agrees to perform certain work and does nothing whatsoever. In these two contexts, the action is in contract and subject to the ten-year prescriptive period provided by LSA-C.C. Art. 3499.

*Lima v. Schmidt*, 595 So.2d 624, 628 n.1-2 (La. 1992).

Plaintiff alleges that his cause of action for breach of contract against defendants is subject to the second exception, i.e., the defendants agreed to perform certain work and did nothing whatsoever. Plaintiff argues that defendants entered into an agreement with defendant to render independent tax advice to defendant and, instead, they issued a "prefabricated 'opinion

13

letter'" to Conwill.[35]

Plaintiff's complaint is replete with allegations with respect to defendants' conduct. For example, plaintiff alleges that he entered into an attorney-client representation agreement with Gordon and Greenberg for the purpose of obtaining legal tax advice.[36] Plaintiff's complaint states that as part of these legal services, Gordon and Greenberg wrote an October 2003 opinion letter to Conwill, attesting to the lawful nature of certain tax shelters.[37] Conwill states in his complaint that the writing of such opinion letter "clearly constitut[ed] legal services."[38] Plaintiff has not demonstrated that defendants did "nothing whatsoever." Accordingly, the one-year prescriptive period for legal malpractice applies to plaintiff's claim for breach of contract against defendants and such claim is prescribed.

*Plaintiff's Claims for Breach of Fiduciary Duty*

Louisiana case law provides guidance with respect to the applicable prescriptive period for a breach of fiduciary duty.[39] A claim for breach of fiduciary duty may be subject to either a one-year prescriptive period pursuant to Louisiana Civil Code 3492 or a ten-year prescriptive period pursuant to Louisiana Civil Code 3499. "[W]hen an alleged breach of fiduciary duty is in the nature of simple negligence, it is treated as a delictual offense, carrying with it a one-year

---

[35]R. Doc. No. 155, p. 10.

[36]R. Doc. No. 1, p. 5.

[37]*Id.*

[38]*Id*.

[39]The U.S. Court of Appeals for the Fifth Circuit has suggested that Louisiana Revised Statute 9:5605 would not necessarily apply to a breach of fiduciary duty claim against an attorney. *Davis v. Parker*, 58 F.3d 183, 191 n.10 (5th Cir. 1995) ("[I]t is not completely clear that section 5605 applies to a breach of fiduciary duty claim . . .[because] it is not clear to us that a breach of fiduciary duty claim can be characterized as a 'traditional legal malpractice' claim.").

14

prescriptive period. On the other hand, when the breach of fiduciary duty alleged is in the nature of deliberate fraud, it is treated as a personal action which, under La. Civ. Code Art. 3499, carries with it a ten-year prescriptive period." *Univ. Rehab. Hosp., Inc. v. Int'l Coop.*, 2006 WL 2983050 at *4 (W.D. La. Oct. 16, 2006) (citing *Young v. Adolph*, 821 So.2d 101, 106 (La. App. 5 Cir. 2002)); *see also Gerdes v. Estate of Cush*, 953 F.2d 201, 205 (5th Cir. 1992) ("[w]here the attorney has breached the fiduciary duty to the client by engaging in self-dealing . . . the ten year prescriptive period applies." 953 F.2d 201, 204 (5th Cir. 1992)); *Marsh Engineering v. Parker*, 688 So.2d 1042, 1045 (La. App. 3 Cir. 1996).

In this case, plaintiff alleges that defendants breached their fiduciary duties by advising plaintiff to pay "exorbitant fees" to engage in tax strategies created by defendants which defendants "knew or should have known to be improper or illegal."[40] Plaintiff alleges that Gordon received payments for recommending that Conwill invest in the tax shelter, and that Greenberg received a payment for Conwill's investment in the tax shelter.[41] Plaintiff has alleged that defendants breached their fiduciary duties by engaging in fraudulent conduct and self-dealing and, therefore, the ten-year prescriptive period under Louisiana Civil Code Article 3499 is applicable to plaintiff's claims for breach of fiduciary duty. Plaintiff's breach of fiduciary duty claim is not prescribed.

## *CONCLUSION*

Considering the foregoing,

**IT IS ORDERED** that Gordon's and Greenberg's motions for summary judgment are

---

[40] R. Doc. No. 1, p. 20.

[41] *Id*. at p. 6.

15

**GRANTED** in that plaintiff's claims for legal malpractice, fraud, conspiracy to commit fraud, and breach of contract are **DISMISSED WITH PREJUDICE**. The motions for summary judgment are **DENIED** with respect to plaintiff's civil RICO claim and plaintiff's claim for breach of fiduciary duty.

New Orleans, Louisiana, July 28, 2010.

**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**